In the Matter of Condemnation by Urban Redevelopment Authority of Pittsburgh of Certain Lands in the 22nd and 23rd Wards of the City of Pittsburgh, Allegheny County, Pa., Redevelopment Area Number 39 (North Shore), Being Property of: Ford Leasing Development Company, a Delaware Corporation, or any Other Persons Found to Have an Interest in the Property.
Urban Redevelopment Authority of Pittsburgh, Appellant.

Argued May 6, 1975, before President Judge BOW-MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Richard W. Kelly,* with him *Richards & Kelly, Joseph Gariti,* and *Marion Popiel,* for appellant.

*John H. Morgan,* with him *Edward G. O'Connor, Peter C. Baggerman,* and *Eckert, Seamans, Cherin & Mellott,* for appellee.

OPINION BY JUDGE MENCER, July 9, 1975:

This is an appeal by the Urban Redevelopment Authority of Pittsburgh (Urban) from an order of the Court of Common Pleas of Allegheny County sustaining the preliminary objections of Ford Leasing Development Company (Ford) to a declaration of relinquishment filed by Urban.

The present controversy had its origin on February 23, 1973, at which time a letter was delivered from

Urban to Ford in which Urban offered to purchase the property involved in this suit known as Parcel 6-A of Redevelopment Area No. 39, the North Shore Project. Thereafter, several other letters of correspondence passed between the parties concerning the sale of Ford's property to Urban.

At the same time as the above negotiations were taking place, proceedings to acquire Parcel 6-A through the powers of eminent domain were begun by Urban. On April 19, 1973, a declaration of taking was filed in the lower court by Urban against Parcel 6-A.

In early May 1973, Urban's plans to acquire Parcel 6-A changed drastically when it became clear that Urban would not be able to proceed on its North Shore Project because of a lack of funds. On May 7, 1973, Urban sent a letter to Ford asking that Ford consider not selling Parcel 6-A despite Urban's previous offer to buy. On May 31, 1973, Urban successfully petitioned the lower court to grant a thirty-day extension of the period for service of notice of the filing of its declaration of taking which had been filed on April 19, 1973 but which had not been served on Ford within a thirty-day period as provided by Section 405 of the Eminent Domain Code (Code).[1] On June 1, 1973, Urban filed a declaration of relinquishment with the lower court. Notice of the filing of this declaration and the declaration of taking was given Ford on June 4, 1973.

Ford filed preliminary objections to both declarations on July 5, 1973 but subsequently withdrew its objections to Urban's declaration to taking.[2] The lower court then

---

1. Act of June 22, 1964, Special Sess., P. L. 84, Art. IV, *as amended,* 26 P.S. §1—405 (Supp. 1974-75).

2. Since Ford withdrew its objections to the declaration of taking, any issue as to the timeliness of Urban's service of notice of the filing of this declaration is not before us and we must assume, for purposes of this appeal, the validity of Urban's declaration of taking.

sustained Ford's objections to the declaration of relinquishment and Urban appealed to us.

Section 408 of the Code, 26 P.S. §1—408 (Supp. 1974-75), gives a condemnor the power to relinquish a property which it has previously condemned by the filing of a declaration of relinquishment within one year of the filing of the declaration of taking. Section 408 reads as follows:

"The condemnor, by filing a declaration of relinquishment in court within one year from the filing of the declaration of taking, *and before having made the payment provided for in section 407(a) or (b) [26 P.S. §1—407], or as to which the condemnee has not tendered possession of the condemned property as provided in section 407*, may relinquish all or any part of the property condemned that it has not taken actual possession of for use in the improvement, whereupon title shall revest in the condemnee as of the date of the filing of the declaration of taking, and all mortgages and other liens existing as of such date shall be reinstated. Notice of said relinquishment shall be recorded in the office of the recorder of deeds of the county in which the property taken is located, with the condemnor as the grantor and the condemnee as the grantee, and the notice of said relinquishment shall be served on the condemnee in the same manner as provided for service of the declaration of taking. The fees payable to the recorder for recording the notice of relinquishment shall be in the same amounts as provided in section 404 [26 P.S. §1—404] for the recording of notices of condemnation. Where condemned property is relinquished, the condemnee shall be reimbursed by the condemnor for reasonable appraisal, attorney and engineering fees and other costs and expenses actually incurred because of the condemnation proceedings. Such damages shall be assessed by the court, *or the court may refer*

the matter to viewers to ascertain and assess the damages sustained by the condemnee, whose award shall be subject to appeal as provided in this act. The condemnor and the condemnee, without the filing of a declaration of relinquishment as provided herein, may by agreement effect a revesting of title in the condemnee, which agreement shall be properly recorded." (Emphasis added.)

Since it is clear that Urban did not make any payment to Ford and filed its declaration of relinquishment within one year of the filing of its declaration of taking, it was entitled to relinquish Ford's property under the above section unless Ford had tendered possession of the property as provided in Section 407, 26 P.S. §1—407 (Supp. 1974-75). Section 407 reads in pertinent part:

"(b) *If within sixty days from the filing of the declaration of taking, the condemnor has not paid just compensation as provided in subsection (a) of this section, the condemnee may tender possession or right of entry in writing and the condemnor shall thereupon make payment of the just compensation due such condemnee as estimated by the condemnor.* If the condemnor fails to make such payment the court, upon petition of the condemnee, may compel the condemnor to file a declaration of estimated just compensation or, if the condemnor fails or refuses to file such declaration, may at the cost of the condemnor appoint an impartial expert appraiser to estimate such just compensation. The court may, after hearing, enter judgment for the amount of the estimated just compensation."

Under this section Ford was first able to tender possession sixty days after the filing of Urban's declaration of taking, *i.e.,* on June 18, 1973.

Since no tender of possession under Section 408 was legally possible until June 18, 1973 because of the sixty-day provision in Section 407, we are compelled to reverse

the order of the lower court. This order, as the accompanying opinion reveals, was based on the lower court's determination that certain letters from Ford to Urban on March 21, May 7, and May 30, 1973 indicated Ford's readiness, willingness, and ability to complete the transaction and were, therefore, a tender of possession in writing under the Code.[3] Since these letters were written *before* June 18, 1973, they were ineffective as a tender of possession under our reading of the above sections of the Code. Therefore, we hold that Urban is entitled to relinquish Parcel 6-A pursuant to Section 408 of the Code.

Order reversed.

---

3. The lower court so held, even though Ford alleged in its preliminary objections that it first learned of Urban's condemnation of Parcel 6-A on June 4, 1973, after the communications in question.